# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIFFANY KADRI NOMA, | : | Civil No. 1:24-CV-00997 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAPITAL BLUECROSS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Plaintiff, Tiffany Kadri Noma ("Noma"), brings this lawsuit for alleged disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). Presently before the court are motions to dismiss filed by certain defendants. For the reasons that follow, the court will deny the motions.

### BACKGROUND

In October 2022, Defendant Peopleshare LLC ("Peopleshare"), a "temporary and permanent staffing agency," hired Noma to work as a customer service representative at Defendant Capital BlueCross, a subsidiary of Blue Cross and Blue Shield Association. (Doc. 23, ¶¶ 5, 7, 21, 35.) Noma interviewed with both Peopleshare and Capital BlueCross for the position. (*Id.* ¶ 22.)

Peopleshare and Capital BlueCross were each involved in various aspects of Noma's employment. Capital BlueCross assigned Noma work, determined her job

responsibilities, was responsible for her day-to-day supervision, and reviewed her performance. (*Id.* ¶¶ 25, 27–29.) Peopleshare, on the other hand, maintained Noma's employee records, including payroll and benefits. (*Id.* ¶ 24.) Both companies issued employee handbooks and policies that governed the conditions of Noma's employment. (*Id.* ¶ 23.) They both oversaw "payroll practices . . . such as scheduling, clocking in and out, and tracking overtime." (*Id.* ¶ 31.) They both assigned managers to supervise Noma during her placement at Capital BlueCross. (*Id.* ¶ 34.) Noma's supervisor from Peopleshare was Defendant Sonia Diodato ("Diodato"). (*Id.* ¶ 10.) Her supervisor from Capital BlueCross was Defendant Jennifer Bellomy ("Bellomy"). (*Id.* ¶ 9.) Finally, any requests for medical leave had to be approved by both Peopleshare and Capital BlueCross. (*Id.* ¶ 33.)

In November 2022, Noma was diagnosed with a schwannoma—a type of nervous system tumor—in her hand. (*Id.* ¶ 37.) This tumor allegedly resulted in "substantial limitations" in Noma's use of her hand. (*Id.* ¶¶ 38–39.) Noma notified both Peopleshare and Capital BlueCross about her diagnosis and her need for surgery to remove the tumor. (*Id.* ¶ 41.) In response, Diodato and Bellomy allegedly told Noma to keep both employers advised as she learned more information about her disability and the timing of her surgery. (*Id.* ¶ 42.) In January and February 2023, Noma allegedly again had conversations with Diodato

and Bellomy about her need for hand surgery and, consequently, medical leave. (*Id.* ¶ 43.)  At this time, Diodato assured Noma that her request for leave would be approved and explained that Noma would have to discuss the issue with Capital BlueCross, who also had to approve the leave.  (*Id.*)

In February 2023, Noma informed Bellomy that she required medical leave for hand surgery during March 1–3, 2023.  (*Id.* ¶ 44.)  During this conversation, Bellomy allegedly expressed concern about Noma's ability to return to work after the surgery.  (*Id.* ¶ 45.)  Bellomy's concern allegedly stemmed from her previous experience with a former disabled employee who required ongoing accommodations and whom Capital BlueCross "had to fire."  (*Id.*)  Noma also allegedly discussed post-surgery accommodations with Diodato, who told Noma to coordinate with Bellomy and assured Noma that Capital BlueCross would discuss this issue with Peopleshare.  (*Id.* ¶ 47.)

On March 3, 2023, Noma's employment at Capital BlueCross was terminated while she was out on medical leave.  (*Id.* ¶ 49.)  Noma allegedly learned of her firing only when she was sent a shipping box for her to return her Capital BlueCross equipment.  (*Id.*)  Noma alleges she had no advanced warning or notice of her firing.  (*Id.* ¶ 53.)  When Noma initially sought a rationale for her firing, both of her supervisors did not provide one and, instead, "blamed the other" for Noma's firing.  (*Id.* ¶ 52.)  Eventually, they allegedly stated that Noma was not

selected for full-time employment with Capital BlueCross for "refus[ing] to participate in a training exercise." (*Id.* ¶ 54.) This rationale was allegedly false, as Noma had completed the referenced training. (*Id.*) Noma alleges that, had she not been fired on March 3, she would have been able to return to work, with or without accommodations, on March 6. (*Id.* ¶ 58.)

On August 29, 2023, Noma filed a Charge of Discrimination against Capital BlueCross and Peopleshare with both the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* ¶ 14.) The EEOC issued Notices of Right to Sue with respect to Capital BlueCross and Peopleshare on March 19, 2024, and April 15, 2024, respectively. (*Id.* ¶¶ 15–16.) The PHRC did not respond to Noma's charge within a year of her filing. (*Id.* ¶ 17.)

On June 17, 2024, Noma filed her complaint in the above-captioned lawsuit. (Doc. 1.) On September 9, 2024, Noma filed an amended complaint. (Doc. 23.) Noma's complaint lodges three claims: (1) a claim under the ADA against Peopleshare and Capital BlueCross; (2) a claim under the PHRA against all Defendants; and (3) a claim under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") against Peopleshare.[1] (*Id.* ¶¶ 62–92.) In response,

---

[1] Noma's COBRA claim is premised on Peopleshare's alleged failure to provide a "COBRA continuation coverage election notice." (Doc. 23, ¶ 88.) Accordingly, the court interprets this

Peopleshare and Diodato filed a joint motion to dismiss, and Bellomy filed her own motion to dismiss. (Docs. 29 & 32.) A brief in support accompanied each motion. (Docs. 30 & 33.) Movants argue that Noma's ADA and PHRA claims should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Noma filed briefs in opposition to each motion. (Docs. 35 & 36.) Only Peopleshare and Diodato filed a reply brief. (Doc. 37.) The motions are now ripe for adjudication.

## JURISDICTION

This lawsuit arises under the laws of the United States and those of Pennsylvania. The court has subject matter jurisdiction over Noma's federal claims pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Noma's state claims pursuant to 28 U.S.C. § 1367(a). Venue is proper here pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the

---

count of Noma's amended complaint to seek relief under the Consolidated Omnibus Budget Reconciliation Act of 1985.

[2] Movants do not seek dismissal of Noma's COBRA claim.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION

### A. Joint-Employer Liability

A threshold issue presented in the motions is which entities can be held liable for what acts. Noma insists that Peopleshare and Capital BlueCross should be considered "joint employers," such that they are held jointly liable for the other's alleged discrimination. (Doc. 35, p. 10.)[3] Peopleshare counters that joint employers can only be held jointly liable when one employer knew or should have

---

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

known about the other's alleged misconduct, a standard that Peopleshare believes

Noma's amended complaint fails to satisfy.  (Doc. 37, pp. 8–10.)

District courts in the Third Circuit "have recognized that joint employer

liability . . . exists under the ADA and the PHRA."  *Pickney v. Modis, Inc.*, Civil

No. 22-1822, 2022 WL 17652698, at *4 (E.D. Pa. Dec. 13, 2022) (collecting

cases).  This is to say that "[j]oint employers can be liable for acts of

discrimination even if one co-employer 'did not directly engage' in the conduct at

issue."  *Moskowitz v. Neshaminy Sch. Dist.*, Civil No. 20-5016, 2022 WL 4225398,

at *6 (E.D. Pa. Sept. 13, 2022) (quoting *Graves v. Lowery*, 117 F.3d 723, 729 n.12

(3d Cir. 1997)).  In general, entities are joint employers when "two or more

employers exert significant control over the same employees—where from the

evidence it can be shown that they share or co-determine those matters governing

essential terms and conditions of employment."  *NLRB v. Browning-Ferris Indus.*

*of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982); *accord Graves*, 117 F.3d at 727;

*Cella v. Villanova Univ.*, Civil No. 01-7181, 2003 WL 329147, at *7 (E.D. Pa.

Feb. 12, 2003), *aff'd*, 113 F. App'x 454 (3d Cir. 2004).

The precise test for what constitutes a joint employer under the ADA is not

well settled.  *Carroll v. Sunrise Detox Cherry Hill*, LLC, Civil No. 19-17287, 2020

WL 4218409, at *6 (D.N.J. July 22, 2020).  Nevertheless, the Third Circuit

affirmed the *Cella* court's decision, which utilized a three-factor test.  *Id.*  That test

looks to each entity's: "1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; 2) day-to-day supervision of employees, including employee discipline; and 3) control of employee records, including payroll, insurance, taxes and the like." *Cella*, 2003 WL 329147, at *7 (quoting *Podsobinski v. Roizman*, Civil No. 97-4976, 1998 WL 67548, at *3 (E.D. Pa. Feb. 13, 1998)).

Determining joint-employer status requires a "fact-intensive analysis." *Bracero v. Transource, Inc.*, No. 5:20-CV-02483-JMG, 2021 WL 1561911, at *3 (E.D. Pa. Apr. 21, 2021). For this reason, courts in the Third Circuit "have allowed pleadings with a thin factual record [concerning the issue of joint-employer status] to survive a motion to dismiss." *Id.* (internal quotation marks omitted) (quoting *Wadley v. Kiddie Acad. Int'l, Inc.*, Civil No. 17-05745, 2018 WL 4732479, at *3 (E.D. Pa. Oct. 1, 2018)).

With these principles in mind, the court finds that Noma's amended complaint sufficiently makes out a plausible claim that Capital BlueCross and Peopleshare were joint employers and can be liable for the other's alleged discrimination. The court considers this issue recognizing that, in general, "[t]he relationship between a placement agency and the employer at which the worker is placed is a classic example of joint employment." *Moskowitz*, 2022 WL 4225398, at *6.

Noma's specific allegations bear this conclusion out.  Noma alleges that she interviewed with both Peopleshare and Capital BlueCross for her customer-service position.  (Doc. 23, ¶ 22.)  Thus, both entities presumably had input on her hiring. Noma further alleges that both Peopleshare and Capital BlueCross "imposed work rules and set conditions of employment"; "maintained [her] employment records"; oversaw "payroll practices . . . such as scheduling, clocking in and out, and tracking overtime"; had to approve any requests for medical leave; and supervised Noma through Diodato and Bellomy, respectively.  (Doc. 23, ¶¶ 23, 30, 31, 33, 34.)  These allegations suggest that both entities had control over her employment conditions and employment records.  While Noma's allegations indicate that Capital BlueCross was perhaps more involved in Noma's day-to-day supervision, performance evaluation, and work allocation, *id.* ¶¶ 27–29, she nevertheless had to discuss with Peopleshare any changes to her work duties.  (*Id.* ¶ 26.)  Thus, it is plausible that Peopleshare had influence over her work responsibilities.  Finally, Noma alleges that all Defendants had a role in her firing, which is plausibly supported by Defendants' inconsistent and allegedly false reasons for her firing. (*Id.* ¶¶ 52, 54, 60–61.)

Peopleshare's insistence that Noma must allege that it knew or should have known of Capital BlueCross's alleged discrimination is incorrect.  Peopleshare offers no controlling authority to suggest that joint liability only attaches when this

*mens rea* requirement is met.  Instead, Peopleshare cites a Seventh Circuit case that applied a burden-shifting test in the context of the National Labor Relations Act. *See Am.'s Best Quality Coatings Corp. (ABQC) v. NLRB*, 44 F.3d 516, 523 (7th Cir. 1995).  Peopleshare also cites a Pennsylvania appellate decision applying the Pennsylvania Labor Relations Act, which is interpreted in a similar manner to the National Labor Relations Act.  *Borough of Pottstown v. Pa. Lab. Relations Bd.*, 710 A.2d 641, 646–47 (Pa. Commw. Ct. 1998).  These authorities deal, however, with a specific context different than the one here.  No authority this court has reviewed concerning the ADA and disability discrimination suggests that joint employers can escape liability by disclaiming that it knew or should have known about a joint employer's misconduct.  In any event, as discussed below, Noma's amended complaint plausibly states a claim that Peopleshare itself engaged in unlawful discrimination.  Thus, even if Noma needs to allege that Peopleshare knew or should have known about discriminatory practices, such standard is satisfied here.

Noma's allegations on this issue may or may not be corroborated as this case proceeds.  At this early stage, however, the court finds Noma's allegations sufficient to consider Peopleshare and Capital BlueCross joint employers. Accordingly, for the purpose of resolving the pending motions, the court will

consider allegations against both Peopleshare and Capital BlueCross in determining whether Noma has plausibly stated a claim against Peopleshare.

### B. ADA & PHRA Claims Against Peopleshare

The court notes at the outset that "claims under the ADA and PHRA are treated as coextensive." *Scott v. Blossburg Borough*, No. 4:21-CV-01985, 2022 WL 16855580, at *5 (M.D. Pa. Nov. 10, 2022) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). Indeed, PHRA claims are generally adjudged "under the same standards as . . . ADA claims." *Doe v. Pennsylvania*, 582 F. Supp. 3d 206, 215 (M.D. Pa. 2022). Accordingly, the court analyzes Noma's ADA and PHRA claims together.

These claims consist of one count for each statute. The amended complaint, however, clearly seeks relief on the basis of three theories of liability: (1) disability discrimination; (2) failure to provide reasonable accommodations; and (3) retaliation for engaging in protected conduct. (Doc. 23, ¶ 73.) The court analyzes each theory of liability in turn.

#### 1. Discrimination Theory

The ADA and PHRA both proscribe discrimination against employees on the basis of disability status, which includes firing an employee because of a disability. 42 U.S.C. § 12112(a); 43 Pa. Stat. § 955(a). To state a claim for disability discrimination, a plaintiff must allege: "(1) [s]he is a disabled person

within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination."  *Scott*, 2022 WL 16855580, at *3 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Peopleshare only contests whether Noma's allegations plausibly allege the third element.  (*See* Doc. 30, pp. 13–14.)  Peopleshare contends that Noma has not alleged any facts to suggest that it discriminated against her on the basis of disability.  (*Id.* at 14.)  The court disagrees.  First, Noma alleges that "Defendants"—*i.e.*, both Peopleshare and Capital BlueCross—made the decision to fire her.  (Doc. 23, ¶ 53.)  When asked why Noma was fired, Peopleshare and Capital BlueCross allegedly refused to give a reason and instead blamed Noma's firing on each other.  (*Id.* ¶ 52.)  Thus, Noma plausibly alleges that Peopleshare itself took an adverse employment action against Noma.[4]

Second, the alleged circumstances of Noma's firing plausibly support the claim that Peopleshare and Capital BlueCross fired Noma because of her disability. Causation in cases like this can be shown by establishing "a temporal proximity between ADA-protected activity and the adverse action" as well as by

---

[4] Even if Capital BlueCross alone made the decision to fire Noma, Peopleshare could be liable as a joint employer.

"[a]llegations of disparate treatment between disabled and able-bodied employees." *Leon v. Bensalem Twp. Sch. Dist.*, Civil No. 23-01374, 2024 WL 3744352, at *5 (E.D. Pa. Aug. 9, 2024). As to temporal proximity, requesting and taking a three-day medical leave is protected activity under the ADA. *Cf. Hanlon v. Precision Metal Servs., Inc.*, Civil No. 19-3859, 2024 WL 388107, at *19 (E.D. Pa. Jan. 31, 2024) (finding that a three-month medical leave to recover from surgery was protected activity under the ADA). Here, Noma alleges that Defendants fired her while she was out on her brief medical leave and only one month after she discussed post-leave accommodations with Diodato and Bellomy. (*See* Doc. 23, ¶¶ 45–47, 49.) This close temporal proximity between Noma's protected activity and her firing gives rise to a plausible inference of discrimination. Moreover, Noma alleges that Capital BlueCross offered full-time employment to similarly situated able-bodied persons, thus treating her worse than those colleagues. (*Id.* ¶¶ 55–56.) At this stage, Peopleshare cannot disclaim liability for Capital BlueCross's alleged disparate treatment since it was plausibly a joint employer.

For these reasons, the court concludes that Noma has alleged enough to plausibly state a claim that Peopleshare discriminated against her on the basis of disability status. Thus, Noma's disability-discrimination claim will survive.

### 2.  Failure-to-Accommodate Theory

A failure-to-accommodate claim requires Noma to plead: "(1) [s]he was disabled and [her] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hops.*, 438 F.3d 240, 246 (3d Cir. 2006)).  Peopleshare advances a singular argument in favor of dismissing this claim.  It argues that Noma's amended complaint contains no allegations that she asked Peopleshare for taking time off for her surgery.  (Doc. 30, p. 15.)  This argument is unpersuasive.

Noma alleges that she notified both employers of her diagnosis and the need for medical leave shortly after her diagnosis.  (Doc. 23, ¶ 41.)  Noma further alleges that she again discussed her need for medical leave with both of her supervisors in January and February 2023, shortly before her surgery.  (*Id.* ¶ 43.)  Diodato even allegedly told Noma that Peopleshare would approve her request for leave once Capital BlueCross approved the request.  (*Id.*)  These allegations are sufficient to establish that Noma asked Peopleshare for medical leave.  Even assuming, counterfactually, that Noma did not allege that she asked Peopleshare for medical leave, Peopleshare implicitly concedes that Noma asked Capital BlueCross for medical leave.  As noted above, Noma has sufficiently alleged that

14

Peopleshare and Capital BlueCross are joint employers such that they can be held liable for the other's alleged discrimination.  *See Moskowitz*, 2022 WL 4225398, at *6.  Accordingly, Noma's failure-to-accommodate claim will proceed.

### 3.  Retaliation Theory

To state a retaliation claim, a plaintiff must sufficiently allege: "(1) she invoked an ADA-protected right; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her invocation of rights."  *Leon*, 2024 WL 3744352, at *6 (citing *Drizos v. PNC Inv. LLC*, No. 22-1736, 2023 WL 4986496, at *5 (3d Cir. Aug. 3, 2023)).  As with the disability-discrimination claim, Peopleshare contends only that Noma has failed to plead the causation element of the retaliation claim.  (*See* Doc. 30, pp. 16–18.)  Generally, Peopleshare argues that Noma has not sufficiently alleged that her firing was caused by her invocation of rights.  (*See id.*)

In analyzing causation in retaliation claims, like disability-discrimination claims, courts look to temporal proximity between the protected activity and adverse event.  Plaintiffs can establish causation by showing that the "timing [of the adverse action] is unusually suggestive."  *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 438 (E.D. Pa. 2023) (quoting *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 530 (E.D. Pa. 2014)); *accord Lawman v. Herbert, Rowland & Grubic, Inc.*, No. 1:18-CV-01999, 2020 WL 5369951, at *11 (M.D. Pa. Sept. 8,

2020) (quoting *McLaughlin v. Fisher*, 277 F. App'x 207, 218 (3d Cir. 2008))

(explaining that temporal proximity "ordinarily is insufficient to demonstrate a

causal link unless the timing is 'unusually suggestive' of retaliatory motive").  By

way of example, the Third Circuit has noted that "two days between a protected

activity and an adverse action is 'unusually suggestive' of  retaliatory motive."

*McLaughlin*, 277 F. App'x at 219 (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d

494, 503 (3d Cir. 2008)).  Three months, on the other hand, is not unusually

suggestive according to the Third Circuit.  *Id.* (citing *LeBoon v. Lancaster Jewish

Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007)).

Peopleshare's argument on this issue considers the period between when

Noma first notified Capital BlueCross of the specific days she needed to take off,

February 2023, and Noma's firing, March 3, 2023.  (Doc. 30, pp. 17–18.)

Peopleshare insists that this one-month period is not unusually suggestive of

retaliation.  (*Id.*)  Peopleshare entirely ignores Noma's allegations that Peopleshare

and Capital BlueCross fired her while she was on medical leave.  (*See* Doc. 23,

¶ 49.)  Firing an employee while she is actively on medical leave is certainly

unusually suggestive of retaliation.  *Cf. Kohler v. TE Wire & Cable LLC*, Civil No.

14-3200, 2016 WL 885045, at *12 (D.N.J. Mar. 8, 2016) (holding that "a

reasonable finder of fact may determine that Plaintiff's termination while on

medical leave is 'unusually suggestive' of retaliation" in the context of an FMLA

claim).  The unusually suggestive timing of Noma's firing is sufficient, at this stage, to satisfy the causation element of a retaliation claim.  *See LeBoon*, 503 F.3d at 232 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)) (explaining that unusually suggestive timing alone can "create an inference of causality").[5]

Peopleshare further argues that Noma's retaliation claim is simply a reiteration of her failure-to-accommodate claim and, thus, should be dismissed as redundant.  (Doc. 30, p. 18.)  Peopleshare is correct that a retaliation claim under the ADA—which arises from "action prohibited by the statute"—cannot be premised on an employer's failure to provide reasonable accommodations—which concerns "alleged failure[] to fulfill the affirmative duties prescribed by the ADA." *Vought v. Twin Tier Hosp., LLC*, No. 1:18-CV-1113, 2019 WL 2501470, at *7 (M.D. Pa. June 17, 2019) (quoting *Pagonakis v. Express LLC*, 315 F. App'x 425, 431 (3d Cir. 2009)).  Therefore, "[c]ourts routinely dismiss retaliation claims that simply 'repackage' claims that an employer failed to offer accommodations." *Barnard v. Lackawanna County*, No. 3:17-CV-00066, 2017 WL 4233030, at *7 (M.D. Pa. Sept. 25, 2017).

---

[5] Noma also alleges that the reasons she received for her firing were inconsistent.  She alleges that Defendants initially blamed each other for Noma's firing, Doc. 23, ¶ 52, but then told her that she was fired for refusing to participate in a training exercise that she allegedly completed. (*Id.* ¶ 54.)  An inconsistency like this can also support an inference of retaliatory animus so as to defeat Peopleshare's motion to dismiss.  *LeBoon*, 503 F.3d at 232–33; *Johnson v. Sage Dining Servs., Inc.*, Civil No. 23-3929, 2024 WL 4700619, at *11 (E.D. Pa. Nov. 6, 2024).

This case is unlike the cases cited by Peopleshare.  The retaliation claims in those cases were solely based on the employer's failure to provide accommodations.  *See Gerber v. Dauphin Cty. Tech. Sch.*, No. 1:23-CV-2039, 2024 WL 1520965, at *7 (M.D. Pa. Apr. 8, 2024) (dismissing retaliation claim that was solely based on employer's failure to provide plaintiff the information she requested on long-term disability insurance); *Semcheski v. Cunningham Lindsey U.S., Inc.*, No. 3:16cv1592, 2018 WL 3417219, at *6 (M.D. Pa. July 13, 2018) (dismissing retaliation claim when employer allegedly placed employee on months-long leave and eventually fired him because it was unable to continue providing the accommodations it had been for two months); *Barnard*, 2017 WL 4233030, at *7 (dismissing retaliation claim that was premised solely on employer's refusal to allow employee to work on a part-time basis after an injury).

Instead, the court finds that this case is more like those in which plaintiffs have been able to identify an "adverse employment decision[] beyond . . . [a] denial of [an] accommodation request."  *Vought*, 2019 WL 2501470, at *7 (finding retaliation claim was distinct from failure-to-accommodate claim when plaintiff alleged that his employer "constructively discharged [him] and then refused to consider him for rehire" after he requested medical leave for his inpatient rehabilitation); *accord Lawman*, 2020 WL 5369951, at *10 (finding retaliation claim and failure-to-accommodate claim were not redundant when plaintiff alleged

that the act of retaliation was her firing after requesting a leave of absence, rather than the denial of a request for accommodations).

Noma alleges that Peopleshare and Capital BlueCross fired her "for engaging in protected activity." (Doc. 23, ¶ 73.) Reading the complaint in the light most favorable to Plaintiff, this allegation can plausibly support the conclusion that her retaliation claim is not based on a failure to provide reasonable accommodations, but rather on Defendants firing her for requesting the accommodation, *i.e.*, medical leave. Given this, the court finds the holdings of *Vought* and *Lawman* more applicable here than the cases cited by Peopleshare. Therefore, the court will not dismiss Noma's retaliation claim as being redundant of her failure-to-accommodate claim.

### C. Punitive Damages for ADA Claims

Peopleshare argues in the alternative that if Noma's ADA claims survive, then the court should dismiss her request for punitive damages under those claims. (Doc. 30, pp. 19–20.) To begin, "[p]unitive damages are recoverable under the ADA." *McFadden v. Biomedical Sys. Corp.*, Civil No. 13-4487, 2014 WL 80717, at *5 (E.D. Pa. Jan. 9, 2014); *see* 42 U.S.C. § 1981a(a)(2).[6] Punitive damages are warranted when "the complaining party demonstrates that the respondent engaged

---

[6] Peopleshare's motion only concerns punitive damages for Noma's ADA claims. As a general matter, punitive damages are not available under the PHRA. *Scott*, 2022 WL 16855580, at *7 (citing *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998)).

in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).  Clearly, the applicability of punitive damages here requires a fact-intensive inquiry as to each Defendant's state of mind.  *See id.* Given Noma's allegations, resolution of this issue on a motion to dismiss is premature.  *See, e.g.*, *Crandall v. Ballou*, No. 3:22-CV-01843, 2023 WL 3136408, at *3 (M.D. Pa. Apr. 27, 2023) (explaining that "because an individual's state of mind usually determines whether an award of punitive damages is warranted, it would be premature to dismiss a punitive damage claim at the outset of litigation); *Scott*, 2022 WL 16855580, at *8 ("Indeed, it would be premature to make the factual determinations required for an award of punitive damages at the motion to dismiss stage.").  The court will not dismiss Noma's claims for punitive damages on her ADA claims at this juncture.

### D. PHRA Aiding-and-Abetting Claims

In addition to bringing PHRA claims against the corporate defendants, Noma also seeks to hold Bellomy and Diodato individually liable under a theory of aiding and abetting.  (Doc. 23, ¶ 79.)  Both Diodato and Bellomy move to dismiss the aiding-and-abetting claims against them.

"The PHRA . . . permits aiding-and-abetting liability in certain circumstances for supervisory employees."  *Doe*, 582 F. Supp. 3d at 215.  Under

the PHRA's aiding-and-abetting provision, 43 Pa. Stat. § 955(e), "[a] PHRA plaintiff may advance . . . liability claims against [persons] who bear responsibility for implementing an allegedly unlawful discriminatory practice." *Hollinghead v. City of York*, 912 F. Supp. 2d 209, 223 (M.D. Pa. 2012) (quoting *D'Altilio v. Dover Township*, No. 1:06-CV-1931, 2009 WL 2948524, at *12 (M.D. Pa. Sept. 14, 2009)), *aff'd*, 592 F. App'x 110 (3d Cir. 2015).  An aiding-and-abetting claim will only succeed when the "plaintiff show[s] that a defendant participated in or compelled discriminatory conduct." *Schepis v. Raylon Corp.*, No. 03-CV-05970, 2006 WL 2803050, at *3 (E.D. Pa. Sept. 26, 2006).

Diodato contends that Noma's allegations of Diodato's involvement in her firing are conclusory.  (Doc. 30, p. 21)  Similarly, Bellomy argues that Noma has alleged no facts to support her claim against Bellomy.  (Doc. 33, pp. 6–7.)  The court finds that Noma has alleged enough for her claims against Diodato and Bellomy to survive.

Noma allegedly told both Diodato and Bellomy about her diagnosis and need for medical leave.  (Doc. 23, ¶ 41.)  She alleges Bellomy shared concerns about Noma's ability to return to work after her medical leave and intimated that Capital BlueCross "had to fire" a former employee who had required ongoing accommodations.  (*Id.* ¶ 45.)  When Noma questioned Diodato and Bellomy as to why she got fired, each supervisor allegedly pointed the finger at the other.  (*Id.*

21

¶ 52.)  Then later, they allegedly told Noma that she was fired for refusing to participate in a training exercise that she allegedly had completed.  (*Id.* ¶ 54.) Based on these facts, Noma reasonably alleges that Diodato and Bellomy were "decision-maker[s] with regard to . . . the decision to terminate her employment." (*Id.* ¶¶ 60–61.)

According to Bellomy, the fact that she discussed medical leave and accommodations with Noma raises the inference that she had nothing to do with Noma's firing.  Maybe so, but Bellomy's alleged doubts about the practicability of Noma working at Capital BlueCross with ongoing accommodations just as easily gives rise to the inference that Bellomy was instrumental in Noma's firing. Drawing all reasonable inferences in Noma's favor, as the court must do at this stage, Noma has sufficiently alleged that Diodato and Bellomy were personally involved in discriminatory conduct.  Therefore, Noma's aiding-and-abetting claims will proceed.

### CONCLUSION

Noma has sufficiently alleged the claims in her complaint.  Therefore, for the reasons explained above, the court will deny both motions to dismiss.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 16, 2025